UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CA NO. 12-10460-JCB

GARRETT W. LING,
        Plaintiff,

v.

TOWN OF CHATHAM,
CHATHAM POLICE DEPARTMENT,
MARK R. PAWLINA, Chief,
        Defendants.


DEFENDANTS' CONCISE STATEMENT OF MATERIAL FACTS


1.  The plaintiff filed a "Petition for Judicial Review and Complaint pursuant to 42 U.S.C. §

    1983" in the Orleans, Massachusetts District Court. (Petition for Judicial Review and

    Complaint)

    Plaintiff agrees with this material fact.

2.  The Petition and Complaint sought a review of the defendant, Chief of Police Mark

    Pawlina's denial of the plaintiff's application for a permit to carry a concealed firearm

    and also contained two counts against the defendants for violation of his civil rights. The

    case was properly removed to the United States District Court in Boston. (Petition for

    Judicial Review and Complaint)

Plaintiff agrees with this material fact but further states that the petition portion is distinct from

the civil rights complaint as the matters must be bifurcated..  An applicant is entitled to a separate

1

hearing for judicial review of a denial of a LTC application pursuant to Massachusetts General Laws 140, § 131(f) and denial of a hearing under this statute, otherwise it violates the Plaintiff's due process rights. The Defendants believe is can be done by motion.  Email Stream of Counsel, Exh. 10; Declaration of James P. Connors, Exh. 11.

3. The plaintiff Garrett Ling ("Ling") resides in Chatham, Massachusetts. (Petition for Judicial Review and Complaint)

Plaintiff agrees with this material fact.

4. He applied for a permit to carry a concealed handgun. (Exhibit A)

Plaintiff. Denied.  On September 16, 2011 the Plaintiff sought to upgrade his firearms identification card ("FID") and applied for a Class A LTC with the Chatham Police Department in the Town of Chatham Massachusetts, Mark. R. Pawlina, Chief ("Defendants").  Exh. "1."  A LTC is not a permit, but a license. An applicant is entitled to a separate hearing for judicial review of a denial of a LTC application pursuant to Massachusetts General Laws 140, § 131(f) and denial of a hearing under this statute, otherwise it violates the Plaintiff's due process rights.  The Defendants believe is can be done by motion. Email Stream of Counsel, Exh. 10; Declaration of James P. Connors, Exh. 11.

5. The application was received by the defendant Town of Chatham ("Chatham") Police Dept.  on September 16, 2011.  Chief of Police Mark R. Pawlina denied the permit by letter of December 23, 2011 (Exhibit B).

Plaintiff.  The Plaintiff states this is factually inaccurate.  When the Plaintiff applied for his LTC, he met with Sgt. Goddard who indicated that the LTC application was merely just procedure because the Plaintiff already held an FID.  Sgt. Goddard indicated that it would only take a few weeks because the Plaintiff's fingerprints and background check were completed.  Exh. 4, 31/5-16.  It was custom or

practice in Chatham, at least as far as the Plaintiff was concerned, to have Sgt. Goddard fill out the

Plaintiff's LTC application and type in the basis for the request for a LTC.  Sgt. Goddard filled out the

Plaintiff's LTC application, not the Plaintiff.

6.  The Chief stated   that the reason for the denial was that he determined that the plaintiff

was an unsuitable person as defined under the statute, M.G.L. c. 140, §131.  He detailed a

number of incidents upon which he relied in making his decision. The plaintiff was

involved in incidents of consumption of alcohol as a minor, being present in a vehicle

being operated by a subject who admitted to using illegal drugs, the plaintiff's admission

to using illegal drugs,  and drugs and smoking materials recovered inside the vehicle.

The Chief stated that because the incident was recent that he would be more comfortable,

"as time passes and you can demonstrate in the future that there will be no more of these

types of incidents."  The Chief indicated that he would reevaluate the application and the

plaintiff's suitability status in a year.  He invited the plaintiff to meet with him in a year,

in November of 2012, to discuss suitability and the possibility of  filing a new application

for the permit.  (Exhibit "B")

Plaintiff.  The Plaintiff denies being involved with drinking at an underage drinking party or even getting

into trouble with his highschool.  When this alleged party occurred, the Plaintiff was in college.  Exh. 4,

45/11-24; 46/1-24; 47/1-24; 48/1-7.

The Plaintiff never made threatening or harassing phone calls.  Exh. 4, 49/2-24; 50/1-24.

The Defendants also cite in Exh. 6 an incident that involved alcohol consumption, an example given was

at Fisherman's Access where the police arrived due to a noise complaint.  The Plaintiff was not drinking.

The Defendants state a bottle of hard liquor was found in a car.  Exh 4, 54/24-24.  This car was not owned

by the Plaintiff and he did not know who owned it. Exh. 4, 54/21-22.  Incredibly, this also served as a

basis for the LTC denial.  The Defendant Chief then admitted that this car did not belong to the Plaintiff.

Exh. 8, 54/8-24; 55/1-20.

The Defendants also indicated in Exh. 6 that the basis for denying the Plaintiff's LTC was due to recent

activity, to wit, November 2011.  No activity as alleged by the Defendants, ever occurred in November

2011.  See Exh. 4, 42/11-24; 43/1-2.

7.  The plaintiff sought an application for a Class A license to carry in public, a concealed in

public a large capacity weapon ("large capacity" referring to the amount of ammunition

able to be held in the magazine). The plaintiff was not  initially disqualified pursuant to

the so-called statutory disqualifications, i.e., he was an adult, he did not have a criminal

record, he did not have a history of mental health treatment, and he was not a subject of a

restraining order pursuant to M.G.L. c. 209(a). (Exhibit "A")

Plaintiff.  The application form requested that the Plaintiff answer several questions which included

biographical background information and whether he has ever been convicted of a crime, subject to

restraining orders and whether he has been confined to a mental institution.  See Exh. 2, Plaintiff's

Answers to Interrogatories 1, 2, 3 and 21.  See Exh. 3, Plaintiff's CORI record.  The Plaintiff was never

treated for drug addiction or alcohol dependence.  Exh. 4, Plaintiff's Deposition, (cited as page/ paragraph

(p/¶)), 29/21-24; 30/6-8.  The Plaintiff was never disqualified or unsuitable.

8.  In his answers to interrogatories Ling stated that the defendant's denial was made with

actual malice towards the plaintiff's father, that the Second Amendment secures him the

right to carry handguns for self-defense and that Massachusetts requires an individual to

obtain a license for the carrying of handguns. (Exhibit C - answer to Interrogatory No.

16).

Plaintiff.  Agreed.

9.  Plaintiff claims that his only monetary losses/ damages were for  legal fees for this

lawsuit, and for  a deprivation of his constitutional rights and for the filing fee for the

petition filed in the Orleans District Court.  He also said that he lost the ability to

purchase a collectible handgun. (Exhibit C – answer to Interrogatory No. 19).

Plaintiff.  Agreed.  Plaintiff further states that a fixed monetary value cannot be placed on a

person's civil rights.

10.  The Plaintiff claims that his job requires him to carry large sums of cash and valuable

precious metals, making him a target of "criminal elements in our society."  He claims

that the defendant, if he had his way, could cause him to suffer the same "fate as in the

Cheshire, Connecticut home invasion murders which occurred on July 23, 2007."

(Exhibit C – answer to Interrogatory No. 21).

Plaintiff.  Agreed.

11.  The plaintiff refused to answer the interrogatory detailing his proper purposes and

reasons for carrying a firearm (Exhibit C – answer to Interrogatory No. 23).

Plaintiff.  Denied.  The Plaintiff's testimony is contrary to what is being proffered by the Defendants

assertions claimed herein, and he never denied answering this inquiry.  He simply objected based on the

advice of counsel in his interrogatory answer due to a federal court's decision on the law in another

jurisdiction.  This interrogatory has since been supplemented to address an appellate court decision

reversing the lower court's decision concerning proper purpose.  The Plaintiff again exhaustively

answered this question again during his deposition.  See Exh. 4, 79/3-11 (need handgun because of

5

carrying precious metals, cash, fear of assault, burglary and physical handicap).

12. The plaintiff said in Interrogatory No. 25 that the general public has the right to keep and bear arms as well as himself.  (Exhibit C – answer to Interrogatory No. 25).

Plaintiff.  Agreed.  The Plaintiff further states that the right to keep and bear arms is secured by the Second Amendment to the United States Constitution and is applicable to Massachusetts.  This right is a fundamental right which subjects the government to a heightened level scrutiny concerning infringement on individual citizens.

13. The plaintiff  testified in his deposition that part of his job working with his father involved errands carrying silver coins to a coin dealer. Contrary to his claim that he carries large sums of cash, the value of the coins cash proceeds was approximately $230.00.  (See Exhibit D, Deposition of the plaintiff, p. 23, l. 1-13.)

Plaintiff.  Denied.  The Plaintiff detailed the process of his carrying precious metals and coins.  During his deposition he was asked to provide an example of a transaction with a metals dealer and he cited one in reply to the Defendants counsel.  Exh. 4, 16/2-22.  This example indicated that he carried $230.00 in cash and the Defendants want the Court to believe that this is not a large sum.  The Defendants have not detailed the complete factual assertions regarding the $230.00.  The Plaintiff also indicated that at times he carries between $7,000.00 and $10,000 in cash.  Exh. 4, 71/19-24; 72/1.

14. The plaintiff claimed that he applied for a large capacity permit because, "I would like to own rifles that hold more than ten rounds."  (See Exhibit D, p. 32, l. 23-24; p. 33, l. 1.)

Plaintiff.  The Plaintiff fully described the basis for his proper purpose to hold a LTC.  See Exh. 4, 9/8-24; 24/12-24; 25/1-24; 28/9-24; 29/1-11.  This proper purpose was detailed by his description of physical injuries, being the subject of a home invasion and carrying cash and precious metals incident to his work.

Self defense is paramount to the Second Amendment.

15. When asked why he decided to own, purchase, carry or possess a handgun other than a

rifle or shotgun, he said it was for self-defense (See Exhibit D, p. 33, l. 2-8.)

Plaintiff.  Self defense was one of the reasons provided by the Plaintiff.

16. He claimed that he needed a concealed handgun rather than a rifle or shotgun.  (See

Exhibit D, p. 33, l. 9-14.)

Plaintiff.  A handgun is a preferred method of ensuring self defense.  The Plaintiff fully answered

this proposition again during his deposition.  See Exh. 4, 79/3-11.

17. The plaintiff testified that the Chief of Police told him that he would consider giving him

a Class B permit which is a pistol permit for target shooting only and which would allow

him to purchase and possess pistols for target and hunting only,  without the right to

carry and conceal them.  (See Exhibit D, p. 35, l. 1-17.)

Plaintiff.  The Plaintiff states that the Chief has provided multiple inconsistent statements.   He

did state the Plaintiff holds a valid FID card which was issued by the Defendants.  Exh. 4, 13/1-4; 30/15-

24; 31/1-16.  See FID card, Exh. 5; see also Exh 6 ("Your Firearms Identification Card is still in active

status.  The denial of this application *does not* affect the status of your FID.") (emphasis added).  The

Defendants never raised any issues or concerns before issuance of the Plaintiff's FID card or after

issuance including during the pendency of this litigation.  The Defendants indicated that they are unaware

of any incidents concerning the misuse of a firearm by the Plaintiff.  Exh. 8, Defendant Chief Deposition,

62/14-22.

18. The plaintiff testified that he never heard of anyone being denied a [license to carry in

Chatham].  (See Exhibit D, p. 78, l. 15-18.)  Plaintiff claimed that his specific need to

7

possess pistols or handguns with a large capacity or high capacity magazine were for all

lawful purposes and self-defense, and that his need to have a weapon with a large

capacity or high capacity magazine rather than a standard or small capacity was, "in case

the criminals are carrying weapons that carry more than ten rounds."  He did not have a

particular experience with being in contact with criminals other than claiming that his

house had once been burglarized. (See Exhibit D, p. 84, l. 7-24.)

Plaintiff.  The Plaintiff stated he did need a LTC and that all lawful purposes was indicated as

well as the need for self defense and being the victim of a crime.  Exh. 4, 68/23-24; 69/1-23.

19. The Chief of Police testified in his deposition on January 4, 2013 to the following:

**Q.** Chief, let me ask you a few questions, kind of a summary of maybe a lot of what you've already
said.  You are the authorized person in the police department to grant, deny, renew or fail to renew what
we call permits to carry concealed handguns; correct?

A      Yes.

Q
And, first of all, we discussed something about the difference between a carrying permit and FID
cards; could you quickly summarize the difference, please.

A      Very simply, the FID card does not allow someone to carry a firearm; whereas,
the license to carry is specifically set up to allow a person to carry a firearm in a concealed
manner.

Q      It's fair to say that an FID card was generally issued for a long gun, a rifle or
shotgun?

A      Yes.

Q      And that requires, I suppose, to be carried in an open manner?

A      Yes.

8

Q      And a carrying permit, primarily, is for a 15 handgun; but, an FID card wouldn't allow somebody to carry, say, a shotgun underneath a coat?

A      Would not allow someone to conceal a weapon on their person.

Q      An FID card would not grant the person the ability to purchase or possess a pistol?

A      Generally, yes, that's correct.

Q      And an FID card, what other requirements, if you know, are there for the issuance of an FID card?

A
I know one of them is the criminal record check, and that's the big one.

Q      So, basically, as we've been discussing, the issue of the chief's discretion based upon a person's suitability and a person's proper purpose, those are not considerations in the issuance of an FID card?

A      No, not -- not in the way it is for a license to carry, no.

Q      And is it fair to say, as long as someone does not have a disqualifying conviction, an FID card is issued?

A.      Yes.

Q      On a personal note, do you consider the issuance of an FID card and license to carry different in terms of importance in the seriousness of granting it?

A      Yes.

Q      And what is that?

A.      Yes, yes, they're very different, in the sense that the license to carry, in my mind, deserves much more scrutiny. And, also, certainly, based on the State statute, requires more scrutiny because that person is now allowed to carry a concealed firearm upon their person.

Q      And as we have discussed earlier, you denied [Plaintiff's] application; is that correct?

A      Yes.

9

Q        And you denied it because you found him to be an unsuitable person?

A        Yes.

Q.       Or not suitable, as the statute provides?

Plaintiff's Counsel; Objection.

A        Yes. He was not suitable to be granted a license to carry.

Q.       And did you form an opinion as to his suitability?

A        Yes.

Q.       And what was that opinion?

A.       My opinion was that because he was involved in a number of incidents involving alcohol and drugs and the use of and/or abuse of alcohol and drugs; also, as well as, a harassing/threatening incident in which he was directly involved in, that just leads me to believe that he was rather immature and that he was engaged in (Witness referring to documents). One specific incident I'll refer to was in a car that was speeding where marijuana was smoked inside the car.  To me, what that indicates to me in terms of his suitability, he was just not a responsible enough person at that point, where I felt comfortable that he should be allowed to carry a firearm.

Q        And you base that opinion on the review of those reports?

A        Based on the review of the reports and my interview, discussion with him, as well.

Q        And that's the one (indicating) where he was found in a vehicle that was speeding and in which marijuana was present?

A        Yes.

Q        And in which he admitted he was smoking marijuana?

A        Yes.

Q.       And an incident where he was also involved at a party at a house involving underage persons and alcoholic beverages?

10

A.      Yes.

Q       And another incident in which he was present at a marina, a dock in Chatham, in which alcohol was present when he was a minor?

A       A pond where there was a party, yes, he was involved.

Q       And there was an incident involving him in which there was an allegation that he was making harassing telephone calls to a party; is that correct?

A       Yes.

Q       And those reports were authored by officers in your department?

A       Yes.

Q       You did not base your opinion on his suitability to carry a concealed weapon solely on a citation given to him for possession of marijuana?

A       No, I did not.

Q       And those incidents, from which you formed your basis for determining suitability, do you believe those were close enough in time from the time that he applied for the license to carry a firearm that they were still relevant?

A       Yes. They were in 2009; and, in my mind, still recent enough to cause me concern.

Q       And, notwithstanding the fact that there was essentially a typographical error, more or less, in the denial letter indicating that the last incident was November of 2011 –

A       Yes.

Q       -you believe that that was still recent enough to be of concern?

A       Yes. The -- there was a typo in the letter. That (indicating) date should have been November of 2009; and, I acknowledged that error, but -- However, there were several incidents, all in 2009, in my mind, which were still very recent.

Q       And those incidents you determined to be relevant in making your determination of suitability?

A       Yes, because collectively, they showed a pattern of irresponsible behavior.

11

Q       And at that point, you did not particularly make a determination of whether or not he had a proper purpose?

Plaintiff's Attorney: Objection.

A:  Yes. Again, the purpose was discussed at the meeting.  I didn't base my decision on suitability on his "purpose," but, again, his purpose -- when I asked him, he was very vague about the purpose.

Q       And what, if anything, did he give you, as far as examples, for what he determined that he -- his proper purpose was?

A       He first told me that he wanted to go hunting, and then, when I asked him about hunting, he was pretty vague on how much he went hunting, how involved in hunting he was. Then, he had changed it and indicated that he wanted it for target practice.  I noted that most people don't usually go hunting with a handgun, and at that point, I – at that point, he indicated that he wanted it, also, for target practice. So my conclusion was that he was pretty unclear and vague on the purpose.

Q       Do you recall if he gave you any good reasons, that -- to fear injury, when he was talking about the reason why he wanted a permit to carry a concealed firearm?

A       Not that I recall, that we discussed.

Q.       And he did not provide you with any explanation, that he needed to carry a concealed firearm for employment, or any other specific purpose?

Plaintiff's Attorney: Objection.

A: He did not indicate that employment was the reason.

Q       And he did not explain to you any reason, that he feared crime or personal injury beyond which anyone else does?

Plaintiff's Attorney: Objection.

A: Not that I recall.  When we were discussing purpose, he indicated that he wanted it for hunting, a n d then, kind of changed i t , indicated that he wanted it for target practice. (Exhibit"E" the deposition of the defendant Chief of Police Mark Pawlina, January 4, 2013, pps 66-75.)

Plaintiff.  Denied.  The Defendants have failed to properly support this exhibit by way of

affidavit or declaration pursuant to Rule 56 and this statement of material fact should be stricken. The Plaintiff answered all questions in Exh. 1 truthfully. See Exh. 4, 31/1. The Plaintiff holds a valid FID card which was issued by the Defendants. Exh. 4, 13/1-4; 30/15-24; 31/1-16. See FID card, Exh. 5 which entitles him to carry a firearm in his home or for sporting purposes. The Plaintiff's affidavit is fully incorporated herein in response to the Defendant Chief's testimony. Exh. 9.

The Plaintiff additionally states as follows:

20. As part of its custom, the Defendants accept LTC applications, where an applicant lists all lawful purposes as a description of "proper purpose."

21. When the Plaintiff applied for his LTC, he met with Sgt. Goddard who indicated that the LTC application was merely just procedure because the Plaintiff already held an FID. Sgt. Goddard indicated that it would only take a few weeks because the Plaintiff's fingerprints and background check were completed. Exh. 4, 31/5-16. It was custom or practice in Chatham, at least as far as the Plaintiff was concerned, to have Sgt. Goddard fill out the Plaintiff's LTC application and type in the basis for the request for a LTC. Sgt. Goddard filled out the Plaintiff's LTC application, not the Plaintiff.

22. Instead of taking a few weeks, the Plaintiff's application was not acted upon until December 23, 2011 when it was denied. Exh. 6, Defendants Denial Letter. The written denial was not delivered to the Plaintiff within forty days are required under Massachusetts law.

23. The Plaintiff contacted the Defendants prior to receipt of the Denial Letter to discuss the delay in issuance of the LTC. He was informed that based on a situation

13

involving his father, that the Defendant Chief thought the situation with the Plaintiff's father could have been very dangerous. This assertion holds the Plaintiff accountable for the actions of his father, thereby implicating constitutional violations. See paragraphs 23 and 27 of the Petition for Judicial Review and Complaint Pursuant to 42 U.S.C. § 1983; see also Exh. 4, 34/7-24.

24. The Defendant Chief, under the pains and penalties of perjury stated in the answers to interrogatories that the basis for the delay in providing a written decision to the Plaintiff was because he needed additional time to do a thorough analysis of the Plaintiff's suitability and proper purpose for issuance of a LTC. See Exh. 7, Interrogatory No. 14.

25. At his deposition, the Defendant Chief testified under oath that a decision was made within forty days. Exh. 8, 32/2-9. This directly contradicts his answer to Interrogatory No. 14 (Exh. 7).

26. The Defendants indicated in Exh. 6 that the basis for denying the Plaintiff's LTC was due to recent activity, to wit, November 2011. No activity as alleged by the Defendants, ever occurred in November 2011. See Exh. 4, 42/11-24; 43/1-2.

27. The Defendant Chief under oath, contradicted himself again by indicating that he, in part based his decision on the interview with the Plaintiff. Exh. 8, 70/15-16. He also testified that he made his decision before the interview which contradicts his interrogatory answer that he needed additional time to analyze the Plaintiff's application. Exh. 7.

28. The Defendants Denial Letter (Exh. 6) is replete with factual inaccuracies and falsehoods. See Exh. 9, Affidavit of Plaintiff.

14

29.     Suitability is fact specific.   However, the Massachusetts Legislature has specifically
indicated that possession of less than one ounce of marijuana cannot be utilized in
regards to denying an applicant a LTC based on suitability.   The Defendants have
ignored this directive.


Respectfully submitted                              Respectfully submitted,
The Defendants,                                     Garrett W. Ling,
By their attorney,                                  By his attorney,


/s/ Bradford N. Louison                             /s/ James P. Connors
Bradford N. Louison                                 James P. Connors, Esq.
BBO # 305755                                        BBO # 653135
Louison, Costello & Pfaff, LLP                      3291 Main Street, P.O. Box 730
101 Summer Street                                   Barnstable, MA 02630
Boston, MA 02110                                    (508) 744-1513
blouison@lccplaw.com                                jpconnorsatty@gmail.com
(617) 439-0305


May 3, 2013


## CERTIFICATE OF SERVICE

I, James P. Connors, hereby certify that on May 3, 2013 the foregoing motion will be
served electronically to the registered participants identified on the Notice of Electronic
Filing (NEF) and in accordance with the Scheduling Order, sent an electronic "Word"
version to the Clerk.


                                           /s/ James P. Connors
                                           BBO # 653135