# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | C.A. NO.: 12-cv-10460-JCB |
| GARRETT W. LING                  ) | |
|                                  ) | |
|             Plaintiff,           ) | |
|                                  ) | |
| vs.                              ) | |
|                                  ) | |
| TOWN OF CHATHAM,                 ) | |
| CHATHAM POLICE DEPARTMENT,        ) | |
| MARK R. PAWLINA, CHIEF,          ) | |
|                                  ) | |
|             Defendant.           ) | |
| _____) | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
## MOTION FOR SUMMARY JUDGMENT AS TO ALL PLAINTIFF'S CLAIMS

The gravamen of the plaintiff Garrett W. Ling's ("Plaintiff") Petition for Judicial Review and Complaint Pursuant to 42 U.S.C. § 1983 (Petition" or "Complaint") constitute two  legally distinct requests for relief.  First, the Plaintiff seeks judicial review of a decision made by the defendants Town of Chatham, Chatham Police Department, Mark R. Pawlina, Chief ("Defendants"or "Chief") that the denial of his license to carry ("LTC") was made in an arbitrary and/or capricious manner and that there was no reasonable grounds to deny said LTC application ("Application").  *Exh. 1.*  Pursuant to G.L. c. 140, § 131(f) *Exh. 12,* the Plaintiff is entitled to a hearing on the merits for this statutorily provided process.   The record amply demonstrates that the Plaintiff has more than satisfied his burden of demonstrating that the actions by the Chief cannot be sustained.  Second, the Plaintiff seeks redress for violations of his Second and Fourteenth Amendment to the United States Constitution against the Defendants and Chief individually.

1

The Plaintiff has not made a facial attack on Massachusetts firearms licensing statutes.
The Plaintiff maintains that the Chief violated Massachusetts firearms licensing statutes,
specifically G.L. c. 140, 131(e), which states with crystal clarity, that the licensing authority
(Chief) shall approve or deny an application and if denied, provide the reason for denial ***within
40 days*** when he processed the Plaintiff's Application.  *See Exh.'s. 1 and 6.*   The Chief, in his
Answer to Interrogatory 14, *Exh. 7,* stated he needed extra time to analyze the Plaintiff's
Application as the basis for violating this statute.  At his deposition on January 4, 2013, the
Chief, however, once again changed his position and stated that he made the decision within 40
days.  *Exh. 8, 32/2-9.*  The written decision was made on December 23, 2011.  *Exh. 6; see also
Exh.. 12 (denial must be in writing).*   Brinkmanship and the game of "hide-and-go-seek" have no
place where constitutional rights are involved, which has occurred in this matter.

The Chief denied the Plaintiff's LTC Application after he allegedly conducted as
thorough review of the Plaintiff and cited incidents he claimed occurred in November 2011, to
call into question the Plaintiff's suitability.  It is quite evident that these incidents served as a
basis for denial.  *See Concise Statement of Material Facts, ¶ 26.*   However, these incidents never
occurred.  It is very troubling that a person who holds an individual's constitutional rights in his
own hands, would provide seriously conflicting statements and reasons for denial during the
course of the discovery in this case.  *See Concise Statement of Material Facts, ¶¶ 24- 28 and all
exhibits referenced therein.*  As set forth below, the Chief's ongoing actions concerning the
Plaintiff's LTC have caused violations of the Plaintiff's constitutional rights.

In addition, the Plaintiff has offered evidence that the Town engaged in a custom or

practice, at least as to the Plaintiff,[1] of allowing an officer to fill out and process LTC application's that ultimately could cause an Application denial.  Simply, the process of allowing an officer to input information on an application on behalf of an applicant, treads dangerous grounds for purposes of G.L. c. 140, 131[2].   A subsequent denial on an alleged insufficiency of information concerning "proper purpose," is a custom or practice that should not be condoned in the Town of Chatham or in this Commonwealth.  *See Exh 4, 31/5-16.*

The Court should deny the Defendants Motion for Summary Judgment, allow the matter to proceed on its merits, and after conducting a separate hearing in accord with G.L. c. 140, § 131(*f),* order the Chief to issue Garret W. Ling his LTC.

## FACTUAL SUMMARY

The plaintiff, Garrett W. Ling, holds a valid firearms identification card ("FID") that was issued by the Chief on November 20, 2008.  *Exh. 5.*  On September 16, 2011 he applied for a LTC for the purposes of shooting sports and self defense.  *Exh. 1.*  Sargent Goddard of the Chatham Police Department, inputted information into the Plaintiff's Application and indicated to the Plaintiff that it should not take more than a few weeks to obtain because the Plaintiff's fingerprints and background check were completed.  *Exh. 4, 31/5-16.*

After a lengthy delay, the Plaintiff contacted the Chief to discuss the basis for delay in his Application, and requested a meeting with him to discuss this issue.  At this meeting, instead of being told of a paperwork backup, he was informed that a situation concerning his father could

---

[1]  Based on privacy concerns, the Plaintiff did not conduct discovery of a database of LTC issuances in Chatham.

[2]  Despite making arguments in the Defendants Memorandum that the Plaintiff failed to substantiate a proper purpose, the Defendants policies purportedly do not require it.  The Chief testified that the Plaintiff is not required to state a purpose and that he did not use *"proper purpose"* to deny the Plaintiff's Application.  *See Exh. 8, 61/6-24; 62/1-12; see Exh.7, Interrogatory No. 5; see Ruggiero infra.*

have been very dangerous if a gun was involved. *Exh 4, 34/22-23.* He never told me that he made a decision or was going to deny my Application. *Exh. 9, ¶ 8.* On December 23, 2011, by way of letter, the Chief denied the Plaintiff's Application and utilized recent incidents in November 2011 which never occurred which constitutes a clear example of an arbitrary and capricious decision that was made in violation of the Plaintiff's constitutional rights. The Chief also claimed he denied the Plaintiff's Application due to incidents where he was an alleged participant as a minor, yet he was never even charged with a single crime. The Chief also stated that his basis for denial was due to a civil infraction the Plaintiff paid for being in a car where marijuana residue was present. *Exh. 6.* The Massachusetts Legislature indicated that a marijuana civil infraction cannot be utilized to determine suitability of an applicant for a LTC. *G.L. c. 94C, § 32L; see also Commonwealth v. Palmer, SJC-11225 (April 5, 2013); Exh. 13.*

The Plaintiff incorporates herein by reference, his version of the Concise Statements of Material Facts in support of denial of the Defendants Motion for Summary Judgment.

## LEGAL ARGUMENT

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "The role of summary judgment is to [] pierce the pleadings and to assess its proof in order to see whether there is a genuine need for trial." *Crarifio v. Benetton Sportsystem USA, Inc., 2005 U.S. Dist. Lexis 12801 (2005), citing Mesnick v. General Electric Co., 950 F. 2d 816, 822 (1st Cir. 1991).* "The Rule 56 pavane has a distinctive set of steps. When requesting summary judgment, the moving party [] must put the ball in play, averring "an absence of evidence to support the

nonmoving party's case." *Id., quoting, Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).*

In a motion for summary judgment, the moving party must establish that there is no genuine issue of material fact whether the matter should go to trial. *950 F. 2d 816, 822 (1st Cir. 1991).* In order to defeat a motion for summary judgment, the non-moving party needs to establish the existence of a trial-worthy issue by "presenting enough competent evidence to enable a finding favorable to the non-moving party." *Goldman v. First Nat'l Bank, 985 F.2d 1113, 1116 (1st Cir. 1993), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).* However, "[a] genuine issue of material fact exists when a fact finder could reasonably return a verdict for the non-moving." *477 U.S. 242, 248 (1986); Sargent v. Tenaska, Inc., 914 F. Supp. 722 (1996).*

As a matter of tradition, a district court must "draw every reasonable inference in favor of the nonmoving party" on summary judgement. *Fletcher v. Haas, 2012 U.S. Dist. LEXIS 44623 (March 20, 2012) quoting Lopera v. Town of Coventry, 640 F. 3d 388, 407 (1st Cir. 2011).*

## II.   G.L. c. 140, § 131

The Plaintiff, an adult resident of Chatham in the Commonwealth of Massachusetts, is law abiding citizen, does not have  a juvenile or adult criminal record, absolutely no history of mental illness, does not abuse drugs or alcohol, was never the subject to a restraining order, does not have any outstanding tax debts and has only been in the court once besides this action to address a speeding ticket, applied for a LTC pursuant to G.L. c. 140, § 131 on September 16, 2011. *See Exh 1, Exh 4, 11/9/21; Exh. 9.*  Mr. Ling is a model citizen who sought to upgrade his FID card for the purposes of shooting, purchasing a collectible firearm and self defense.  Having never had any negative incidents with firearms, he was told that this upgrade was just routine.

5

*Exh. 4, 31/5-16.*

The Defendants in page 9 of their Memorandum correctly note that the licensing scheme in Massachusetts provides categories of licenses that may be issued to a prospective applicant. The Plaintiff holds an FID card, and has done so since the age of eighteen. *Exh. 5.* Massachusetts also allows for this issuance of a Class A or class B license to carry. Issuance of these licenses may be subjected to restrictions pursuant to G.L. c. 140, § 131(d). Each of these licenses concern the keeping and bearing of firearms and therefore subject to the Second Amendment.

Article 17 of the Massachusetts Declaration of Rights, it has been consistently held, does not confer the right of a private citizen to keep and bear arms. *Chief of Police of Shelburne v. Moyer, 16 Mass. App. Ct. 543547 (1983).* Under Article 17 the requirement of a license is not unconstitutional. *Id. citing Commonwealth v. Davis, 369 Mass. 886 (1976).* On June 28, 2010, the United States Supreme Court held in *McDonald v. The City of Chicago*, *130 S. Ct. 3020 (2010)* that the Second Amendment was incorporated against the states.

Although the licensing scheme has not changed in Massachusetts post *McDonald*, a citizen's right to keep and bear arms necessarily has within this Commonwealth. *See Hightower v 693 F. 3d 61 (2012); see also Powell v. Tompkins, 213 U.S. Dist. Lexis 27695 (February 28, 2013)* ("The Second Amendment, by its terms, provides a powerful albeit concise constitutional guarantee ... [and] the right to keep and bear arms applies to state gun control regulation via the Due Process Clause of the Fourteenth Amendment."). With incorporation of the Second Amendment, the people of Massachusetts and elsewhere, now benefit from this newly incorporated fundamental constitutional right. Incorporation necessarily places a heavier burden

6

on government it seeks to enact new firearms legislation and in its application of existing restrictions that remain valid with heightened constitutional scrutiny. This includes how it manages its licensure statutes. *See United States v. Booker, 644 F. 3d 12, 25 (1st Cir. 2012).* The application of these burdens extend to the Defendants. *See Collier et al. v. Town of Harvard, et al., 1997 US Dist. Lexis 23582 (1st Cir. 1997).* Accordingly, the actions of a municipality and/or its licensing authority must be subjected to heightened scrutiny for their actions when processing firearms applications.

"Massachusetts General Laws chapter 140, sections 129B and 31 set out the requirements for obtaining an FID card and a license to carry." *Powell supra.* Relevant to this matter are the provisions embodied in section 131. *See Exh. 12.* The Defendants are correct that the Massachusetts licensing scheme embodies a suitable person standard which means a person who is sufficiently responsible and skilled with firearms. Defendants Memorandum, page 12. The Plaintiff has held an FID card since the age of eighteen (Exh. 5) and has done so without incident. He has taken and passed a Basic Firearms Safety course and received a certificate. *Exh. 14.* In fact, since the Plaintiff desired to hunt, he took a five day long course in addition to the three hour course which additionally required written testing as well as hands on skills to obtain his hunter certificate. *Exh. 4, 26/2-24; 27/1-24; 28/1-6.* Without equivocation, this demonstrates that the Plaintiff is sufficiently responsible and skilled with firearms. However, the record amply demonstrates that the Chief never took this into consideration when he denied the Plaintiff's Application. For purposes of G.L. c. 140, § 131, this constitutes an arbitrary abuse of discretion. *See Godfry v. Chief of Police of Wellesley, 35 Mass. App. Ct. 42, 46 (1993).*

This matter differs from *Hightower v. City of Boston, 693 F. 3d 61 (2012)* in several

7

respects, but most importantly the Plaintiff has not challenged the licensing scheme, he has challenged how the licensing process employed by the Chief and Defendants have violated his Second Amendment rights.   The Defendants have not identified any fact or evidence which would lead the Court to believe the Plaintiff lied or was untruthful in his Application.   The Plaintiff has been truthful throughout this process.   Conversely, the Chief  indicated in Interrogatory No. 14 that he needed additional time to evaluate the Plaintiff's Application *(Exh. 7)*, yet he subsequently testified at his deposition on January 4, 2013 that in fact he did not make a determination about the Plaintiff being confined to a mental institution or whether he had been convicted of a crime in another jurisdiction.  *Exh. 8, 28/4-21*.  The Chief did however indicate that he made the decision within forty days.  *Exh. 8, 32/9-11.*  This vacillation strikes at the Chief's veracity.

The Chief also cited a bottle of hard liquor in a car as part of the suitability basis for denial.   The vehicle had an address of 18 Sounding Lane, Chatham Massachusetts.   The Plaintiff's undisputed address is 57 Winter Home Road, Chatham Massachusetts.  *See Exh.7, 54/8-24; 55 1-17.*   These inconsistent sworn statements unequivocally show that the Chief's testimony, statements and position concerning the Plaintiff's license to carry simply lack merit.  Without doubt, the Chief acted in an arbitrary and capricious manner when he allegedly evaluated the Plaintiff's Application.

Another example is the Chief's statement is the Denial Letter *(Exh. 6),* which partly served as a basis for denial.   This statement concerned the alleged use of marijuana whereby the Plaintiff received a civil infraction citation .   *Exh. 8, 40/4-24; 41/1-24; 421-24.*  The Chief was aware of the Law Enforcement Guide to Firearms Law 17th Edition *(Exh. 14)* which indicates that

civil infractions for marijuana are not to be considered for purposes of denying an application for a LTC based on suitability.  Despite the fact that he was educated in firearms licensing in Massachusetts.  *Exh. 8, 10/15-24; 11/1-11; 16/1-6.*  Even if the Court were to give the Chief considerable latitude as set forth in *Ruggiero v. Police Commissioner of Boston, 18 Mass. App. Ct. 632, 635 (1984)*, the facts presented herein overcome any deference that may be given to the Defendants.  This appears to be a matter bearing on somewhat similar facts as to those adduced in *United States v. Fisher, 711 F. 3d 460, 466 (4th Cir. April 1, 2013) citing Ferrera v. United States, 397 F. 3d 278 (1st Cir. 2006)* (deliberate misrepresentation underpins entire case) concerning the actions of a police officer.  *See Exh. 4, 17-24.*

Most notably, G.L. c. 140, § 131 provides for an increasingly stringent notice requirement.  *Police Commissioner of Boston v. Robinson, 47 Mass. App. Ct. 767, 772 (1999).* G.L. c. 140, § 131(e) makes it clear that the Chief shall issue a written decision if forty days upon receipt of an application for a LTC.  It must be noted that a "... statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Dupont v. Chief of Police of Pepperell, 57 Mass. App. Ct. 690 (2003) citing Board of Education v. Assessor of Worcester, 368 Mass. 511, 513 (1975).*  The Chief offered differing views on the decision and notice requirement.  He first indicated that he needed additional time to evaluate the Plaintiff.  He then indicated that he had made a decision within forty days but wanted to accommodate the Plaintiff in late October or early November for a meeting and then he eventually provided a written decision on December

23, 2011.  *See Exh.'s 7 & 8 supra.*

A petition for judicial review has specific mandates for filing in the District Court with proper jurisdiction.  The statute has differing provisions as it relates to licensing, to wit, 131(e) and 131(f).  The plain meaning of 131(e) dictates that an applicant be notified in writing within forty days by the licensing authority.  *See DeLuca v. Chief of Police of Newton, 415 Mass. 155, 159 (1993)* ("Where language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words.").  The word "shall" squarely places an affirmative burden upon the Chief to provide a written decision in accordance with this statute.  131(f) simply provides an appeal period for an applicant.  Unlike *Commonwealth v. Hampton , 26 Mass. App. Ct. 938 (1988)* where an individual purposefully evaded the notice of license revocation and was therefore statutorily barred from asserting a deprivation of due process, the Plaintiff expressed concern over the delay in his application.  The Chief, charged with the obligation of making timely determinations of one's fundamental right pursuant to the Second Amendment, must reply in writing within forty days as set forth in G.L. c. 140, § 131(e).  The Legislature, it must be determined included this provision to prevent manifest injustice or Brinksmanship.  131(f) provides an escape valve for those who have suffered at the hands of a violating issuing authority.  To conclude otherwise would place a disproportionate burden upon an applicant, and in reality, allow an applicant to prevail in the District Court because the licensing authority has produced no information as to the basis for denial, which essentially short circuit's the goal of firearms legislation and need for a Petition for Judicial Review.  *See Commonwealth v. McGowan, 2013 Mass. Lexis 13 (January 29, 2013).*

The Defendants argument that G.L. c. 140, 131(m) is operative must fail.  In addition to

what was previously noted above, the purpose of this section is to provide  "... a safe harbor from potential criminal sanctions to certain gun owners whose licenses have expired." *Commonwealth v. Farley, 64 Mass. App. Ct. 854, 857 (2005).*  The Plaintiff has not been charged with a crime, has never been charged with a crime and does not have a criminal record.  *See Exh. 3.*  The safe harbors provisions are inapplicable to this case.

The evidence presented herein provides a detailed factual background of the Plaintiff's Application and how it was handled.  It is without doubt, that the Application was denied not because of the Plaintiff's suitability, but for reasons the Plaintiff partly believes are attributed to his father.  *See Freeman v. Town of Hudson, et al., 2013 U.S. App. Lexis 7487 (April 15, 2013).* Simply put, the denial of the Plaintiff's LTC Application after review of the facts contained herein, appear to be a malicious and bad faith intent to injure Mr. Ling as there was absolutely no basis for denial under the standards set forth in Massachusetts' firearms licensing laws. *Rubinivitz v. Rogato, 60 F. 3d 906, 909-10 (1st Cir. 1995).*

**III.    A.                               COUNT I**
        **PLAINTIFF'S CLAIM AGAINST THE TOWN OF CHATHAM**

The issues presented here concern how the Plaintiff's Application was processed and determined, not the constitutionality of the licensing scheme in Massachusetts. The Petition for Judicial review and Complaint Pursuant to 42 U.S.C. § 1983 alleges that the Defendants have engaged in a policy, custom or practice that allows for the arbitrary denial of LTC applications. In support of these allegations, the Plaintiff described the process of how the police department filled out his Application, indicated that it was just a routine upgrade from his FID card, and that it would only take a few weeks to be approved.  *See Exh. 1, 4, 31/5-16.; see also fn. 2 supra.*  He

signed the completed application.

The Plaintiff, in detail, described the policy, custom or practice that the Defendants engage in.  The Plaintiff's allegations are that the Defendants engage in conduct that is designed to cause an applicant to submit an LTC application that may be inadequate unknowing to an applicant.  As far as the Plaintiff is concerned, the detailed assertions made throughout this Memorandum of Law, provides specific detail as to the Defendants deliberate indifference towards the Plaintiff.

In order for the Plaintiff to hold the Town of Chatham liable, he must demonstrate a direct causal link between the policy, custom or practice and the alleged constitutional deprivation.  *See Pinero v. Gemme, 2013 U.S. dist. Lexis 43636 (March 26, 2013).*  There is no doubt that the Second Amendment secures an individual the right to keep and bear arms.  In Massachusetts, it is a crime to possess a firearm without first securing a license.  *See G.L. c. 269, § 10(h).*  Unlike many other states, Massachusetts requires a firearms license for any sort of possession and ownership thereby drawing only subtle differences between a FID card and a LTC.[3]  As previously noted, Massachusetts has several types of licenses and differentiates standards to obtain each such license and allows for conditions to be placed upon such grant, particularly for issuance of a LTC.  Even though a LTC subjects an applicant to greater scrutiny, this does not permit a municipality to allow the practice of having an officer input all required information on an application including the section that requires an explanation for the request, then utilizing the officer's inputted information as the basis for denial.  *See Exh. 1; see also Exh.*

---

[3] An FID card permits an individual to possess rifles and shotguns.  A LTC permits a person to possess rifles, shotguns and pistols, the preferred firearm for defense of home and self.  Other distinctions include the method of carry outside the home.

*7, Interrogatory 5* (Chief will testify plaintiff did not have a proper purpose).  Where a policy such as the Defendants is abused or misapplied, the remedy is to reverse it.  *Thomas v. Chicago Park District, 534 U.S. 316, 325 (2002)*.

Prior to 2010, Massachusetts did not recognize the right to keep and bear arms and has consistently held that there is no individual right under Article 17 of the Massachusetts Declaration of Rights.  After incorporation of the Second Amendment, broad sweep challenges to Massachusetts gun laws occurred.  *Hightower v. City of Boston, 693 F. 3d 61 (2012)*.  These laws remain valid.  *See McGowan infra* ("McDonald did not invalidate laws that require a person to have a firearm identification card ... and to have a license to carry....").  However, rascality has no place in conduct that burdens fundamental rights, including the application and decision making process of licensure of firearms.

A single act, like those the Plaintiff alleges, can and should subject a municipality to liability.  *See Harrington v. Almy, 977 F. 2d 37, 45 (1ˢᵗ Cir. 1992)*.  Unlike *Pinero v. Gemme, 2013 U.S. dist. Lexis 43636 (March 26, 2013)*.  These bad faith acts were deliberate.  The exhibits presented herein support this conclusion.  *See Exh. 7 & 8*.  The Defendants hold ultimate responsibility for enforcing the policy or custom concerning firearms licensing.  The municipal Defendants should proscribe a policy of indicating to an applicant that it is mere routine and simply an upgrade, when an applicant such as the Plaintiff seeks a LTC from an FID card, and then being told that it should not be more that a few weeks to process, then denying due in part by a failure to state a proper purpose, is a policy or custom in the Town of Chatham.  *See Freeman v. Town of Hudson, 2013 U.S. App. Ct. Lexis 7487 (1ˢᵗ Cir, April 15, 2103)*. There is no legitimate purpose derived by this municipality for these constitutional violations and appropriate

relief should be rewarded to the Plaintiff.  It should be found that the Chief has bound the

municipality, even to the single act of denying the Plaintiff's Application inappropriately.  These

acts should bind the municipality to liability because they represent a policy or custom in accord

with *Monell,* and therefore, immunity should not attach.  *Harrington v. Almy, et al., 977 F. 2d 37,*

*45 (1992).*

**III.     B.                          COUNT II**
            **PLAINTIFF'S CLAIM AGAINST CHIEF, MARK. R. PAWLINA**

The Defendants seek summary judgment for Count II which rests against the Chief for his

actions and conduct concerning the Plaintiff's Application.  Although "... qualified immunity ***can***

protect officers from litigation based on misjudgments about where lies the sometimes hazy

border between excessive and acceptable force.  Qualified immunity shields an officer from suit

when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the

law governing the circumstances she confronted."  *Asociacion De Periodidtass De Peuerto Rico,*

*et al. V. Mueller et al., 680 F. 3d 70, 80 (1ˢᵗ Cir. 2012)* (emphasis added).

"Determining the applicability of the qualified immunity doctrine in a given case requires

a three-step inquiry.  Operating within that framework, an inquiring court must consider (I)

whether the plaintiffs' proffered version of the facts, if true, makes out a violation of a

constitutionally protected right; (ii) if so, whether that right was clearly established at the time of

the putative violation; and (iii) if the answers to the preceding two queries are affirmative,

whether a reasonable public official, situated similarly to the defendant, should have understood

the challenged act or omission to violate the discerned right."  *Morelli v. Webster, 552 F. 3d 12,*

*18 (2009); See Pagan v. Calderon, 448 F. 3d 16, 31 (1ˢᵗ Cir. 2006).*

As set forth above in exhaustive detail, the Plaintiff: (i) has provided enough information concerning the rights afforded him; (ii) the right was clearly established since June 28, 2010; and (iii) the conduct of the Chief violated his rights in his processing of the Application, evaluation of the Application and decision denying the Application.  The Chief is the final decision maker concerning for FID cards and LTC applications**.**  No other person in the Town of Chatham has been designated for this obligation.

The Defendants cannot argue that the Chief made a simple mistake when he violated the forty day written notice requirement under G.L. c. 140, § 131(e).  The Defendants cannot argue that it was the Plaintiff's fault for inputting "ALL" on his LTC Application.  *Exh. 1.*  The Defendants cannot argue that the Plaintiff has a history of alcohol and drug abuse, most recently in November 2011.  There is absolutely no evidence whatsoever concerning this claim.  "The qualified immunity defense requires an incremental degree of error...."  *Morelli at 24.*

This case represents a pattern of abuse by the Chief.  As the Defendants claim, he was just doing his duty, yet he knowingly violated the law, has provided egregiously inconsistent statements and allegations and has maintained an ever evolving story as to the basis for denial of the Plaintiff's LTC.  *See Exh's. 6, 7 and 8.*  The Plaintiff has set forth documented and relevant facts that puts the chief's actions "... outside the universe of protected mistakes."  *Morelli at 24; citing Vondrak v. City of Las cruces, 535 F. 3d 1198, 1209-10 (10th Cir. 2008); Jones v. Parmley, 465 F. 3d 46, 63 (2nd cir. 2006); Smoak v. Hill, 460 F. 3d 768, 784 (6th Cir. 2006); Kukula v. Hulm, 310 F. 3d 1046, 1050 (8th Cir. 2002); DeGraff v. Dist. Of Columbia, 326 U.S. App. D.C. 270 (D.C. Cir. 1997).*

The Defendants have asserted that the Plaintiff must commence suit by making a prima

facie case of the improper conduct, whether actual or constructive.  They argue that the Second

Amendment lacks sufficient clarity for a reasonable official, such as the Chief to understand.

Once again, it seems that the Defendants arguments are amorphous at best.  *See exh. 8, 10/21-24.*

*McDonald* has been the law of the land since 2010 and over a year passed since incorporation of

the Second Amendment.  One thing must be certain, the Chief was sufficiently educated to

understand that this Amendment is a fundamental right.  *See Exh 8, 10/20-24.* As fundamental as

the right to attend church, receive Miranda warnings and a myriad of other rights that an educated

police officer would sufficiently understand.

To argue that there are no clearly established standards is specious at best and cite *United*

*States of America v. Rene E, 583 F. 3d 9 (2009)* to substantiate the claim that there is no right to

an unrestricted Class A license is wrong.  This case concerned a juvenile, Mr. Ling is an adult.

That case also concerned the ban on juvenile possession handguns.  The court did indicate that

the Second Amendment leaves intact regulatory measures.  Massachusetts allows the issuance of

a LTC.  The Commonwealth is permitted to impose restrictions.  This case does not challenge

Massachusetts law.

With the utmost certainty, the Chief must, at a minimum, must follow the Constitution

and applicable state laws when processing a firearms license application.  He failed to do so in

this case. The facts and evidence presented in support of opposition to the Defendants Motion for

Summary Judgment, amply demonstrate that the Chief has not provided clear answers to the

basis for denial.  This fact standing alone, should be sufficient to overcome any hurdle imposed

by Fed.R.Civ.P. 56.

The Defendants have cited absolutely nothing to substantiate the claim that Garrett W.

16

Ling is not a suitable person, thereby preventing him from obtaining a LTC.

## CONCLUSION

The Defendants denied the Plaintiff's request for a license to carry firearms based on a series of conflicting stories that simply do not suffice to support their claim concerning suitability.  In the decision making process, the Defendants are bound by the Second Amendment.

Massachusetts is permitted to place limitations on the right to keep and bear arms.  The Plaintiff does not dispute this.  The Defendants however, do not have the right to violate existing laws in their attempts to deny Mr. Ling a LTC.  The Defendants cannot modify or alter the process in granting or denying LTC applications as they deem fit, even with the considerable latitude of discretion that the license issuing authority is granted.  The Defendants conduct has harmed Garrett W. Ling.

Wherefore, based on the foregoing discussion, the Plaintiff respectfully requests that this Honorable Court deny the Defendants Motion for Summary Judgment and issue judgment in favor of Garrett W. Ling pursuant to Fed.R.Civ.P. 56(f)(1) as the nonmovant is this case and order that his license to carry be issued forthwith.

Respectfully submitted,
Garrett W. Ling,
By his Attorney,


/s/ James P. Connors
James P. Connors, Esq.
BBO # 653135
3291 Main Street
P.O. Box 730
Barnstable, MA 02630
(508) 744-1513


## CERTIFICATE OF SERVICE

I, James P. Connors, counsel for plaintiff Garrett W. Ling, hereby certify that on, May 3, 2013, I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ James P. Connors
James P. Connors, Esq.
BBO # 653135