UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                        )
GARRETT W. LING,                          )
                                                        )
                        Plaintiff,             )
v.                                                     )                Civil Action No. 12-10460-JCB
                                                        )
TOWN OF CHATHAM, CHATHAM POLICE   )
DEPARTMENT, and MARK R. PAWLINA, Chief, )
                                                        )
                        Defendants.         )
_____)

**ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO
AMEND AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
[Docket Nos. 29, 33]

July 12, 2013

Boal, M.J.

 Plaintiff Garrett W. Ling ("Ling") brings this action against the Town of Chatham ("the

Town"), the Chatham Police Department ("Department"), and Police Chief Mark R. Pawlina

("Pawlina"). This action arises out of Pawlina's denial of Ling's application for a Class A

license to carry firearms ("LTC").

 Ling petitions the Court for judicial review of Pawlina's decision and separately asserts

claims under 42 U.S.C. § 1983 alleging deprivations of his constitutional right to keep and bear

arms. Ling also seeks leave to amend his petition for judicial review and complaint to assert a

claim against Pawlina for his failure to deny the LTC application within the forty-day period

provided by Massachusetts' firearms licensing statute, M.G.L. ch. 140, § 131. Docket No. 29.

Defendants have filed a motion for summary judgment on all counts. Docket No. 33.

 For the reasons stated below, the Court (1) grants Defendants' motion for summary

judgment as to the Section 1983 claims and denies without prejudice that motion with respect to

the petition for review, and (2) denies Ling's motion to amend to the extent it seeks to amend the

Section 1983 claims and denies without prejudice that motion to the extent it seeks to amend the

petition for review.  The Court further remands the petition for review to state court.

I.      FACTUAL BACKGROUND[1]

Ling is a resident of Chatham, Massachusetts.  DSMF ¶ 4.  At all times relevant to the

instant action, Ling held a firearms identification card ("FID card") issued by Pawlina on

November 20, 2008.  See Pl. Opp., Exs. 5, 6.   On September 16, 2011, Ling filed an LTC

application with the Town seeking a "Class A License to Carry – Large Capacity."  DMSF ¶ 4,

Ex. A.  At the time he applied for the LTC, he met with Sergeant Goddard of the Department.

PSMF ¶ 21.  Sergeant Goddard inputted Ling's information into the LTC application and

informed him that the application process would take only a few weeks.  Id.

Ling and Pawlina subsequently met.  PSMF ¶ 23; Pl. Opp., Ex. 4 at 17; Pl. Opp., Ex. 9 at

¶ 8.[2]  At that meeting, Pawlina and Ling discussed Ling's pending LTC application and his

eligibility to obtain the LTC.  DSMF ¶ 19.  Pawlina also referenced an incident involving Ling's

father and explained that the incident could have been very dangerous if a gun had been

involved.  PSMF ¶ 23; Pl. Opp. Ex. 4 at 15.[3]

---

[1] The facts are derived from: Defendants' Concise Statement of Material Facts and the exhibits attached thereto (Docket No. 35) ("DSMF __"); Ling's responses to the Defendants' statement of facts (Docket No. 37) ("PSMF __"); and the exhibits attached to Ling's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Docket No. 38) ("Pl. Opp., Ex. _").  For purposes of the present motion on summary judgment, the Court sets out any disputed facts in the light most favorable to the non-moving party.  See DeNolvellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997).

[2] The parties have not noted the exact date of the meeting between Pawlina and Ling.

[3] When referencing the exhibits attached to the parties' briefs, the Court cites to the docket page numbers.

By letter dated December 23, 2011, Pawlina found Ling to be an "unsuitable person" and denied his LTC application.  DSMF ¶ 5, Ex. B; Pl. Opp., Ex. 6 at 2.  As stated in the letter, Pawlina based his decision on a review of Department records, which indicated Ling's prior involvement in underage drinking and the use of illegal drugs.  DSMF ¶ 6; Pl. Opp., Ex. 6 at 2. Specifically, Pawlina explained that Ling was involved in several incidents, as a minor, involving the consumption of alcohol by minors.  Id.; Pl. Opp., Ex. 6 at 2.  Pawlina also referred to an episode in which Ling was a passenger in a vehicle operated by a subject who admitted to using illegal drugs.  Id.; Pl. Opp., Ex. 6 at 2.  Pawlina noted that Ling himself admitted to using illegal drugs at that time, and that drugs and smoking materials were recovered in the vehicle. Id.; Pl. Opp., Ex. 6 at 2.  Pawlina concluded, "[b]ecause such activity was very recent, occurring in November of 2011,[4] I would feel more comfortable as time passes and you can demonstrate in the future that there will be no more of these types of incidents."  Pl. Opp., Ex. 6 at 2.  Having determined that Ling was not suitable for a LTC, Pawlina did not proceed to explain whether or not Ling had identified a "proper purpose" for a LTC.  See id.; see also DSMF ¶ 19.

## II.     PROCEDURAL BACKGROUND

On February 27, 2012, Ling filed his petition for judicial review and complaint in state court.  Docket No. 1, Ex. 2 at 2-7.  Defendants thereafter removed the action to this Court on the basis of the Section 1983 claims.  Docket No. 1.  On April 30, 2012, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge for all purposes.  Docket No. 4.  On May 30, 2012, this Court issued a scheduling order, which stated "[e]xcept for good cause shown, no motions seeking leave to add new parties or amend the pleadings to assert new claims or defenses may be filed after July 20, 2012 ("Amendment Deadline")."  Docket No. 10 at 1.

---

[4] Although the denial letter states that the listed incidents occurred as recently as November 2011, Pawlina has since testified that the reference was a typographical error and that the date should have been November 2009.  DSMF ¶ 19.

Ling filed the subject motion for leave to amend his petition for judicial review and

complaint on February 24, 2013.  Docket No. 29.  On March 1, 2013, the Defendants filed an

opposition to Ling's motion.  Docket No. 31.  On March 27, 2013, the Defendants filed the

present motion for summary judgment.  Docket No. 33.  Ling filed his opposition to their motion

on May 3, 2013.  Docket No. 38.  On June 26, 2013 the Court heard oral argument on both

motions.  Docket No. 44.

III.   MASSACHUSETTS' FIREARMS LAW

In Massachusetts, it is a felony to carry a firearm in public without a valid license.

M.G.L. ch. 269, § 10.  Massachusetts has three categories of licenses available for the carrying of

firearms: a FID card, a Class A license, and a Class B license.  See Hightower v. City of Boston,

693 F.3d 61, 65 (1st Cir. 2012); M.G.L. ch. 140, §§ 129B, 131.

A FID card "allows the holder to own, transfer, or possess a firearm in his residence or

place of business."  Commonwealth v. Gouse, 461 Mass. 787, 965 N.E.2d 774, 785 n. 14 (2012).

A Class B license entitles a holder "to purchase, rent, lease, borrow, possess and carry: (i) non-

large capacity firearms…and (ii) rifles and shotguns, including large capacity rifles and

shotguns."  M.G.L. ch. 140, § 131(b).  Class B licenses "shall not entitle the holder thereof to

carry or possess a loaded firearm in a concealed manner in any public way or place," shall not

generally "entitle the holder thereof to possess a large capacity firearm," and may be issued

subject to "such restrictions relative to the possession, use or carrying of large capacity rifles and

shot guns as the [licensing authority] deems proper."  Id.  Class A licenses provide the same

privileges as Class B licenses, except that the holder may possess "large capacity firearms,"[5] and

_____

    [5] "Large capacity" firearms include any semi-automatic firearms "capable of accepting, or
readily modifiable to accept, any detachable large capacity feeding device."  A"[l]arge capacity
feeding device" is defined to include any magazine or similar item that can hold, inter alia,
"more than ten rounds of ammunition."  M.G.L. ch. 140, § 121.

the statute does not preclude possession or carrying of concealed firearms in public.  <u>Hightower</u>,

693 F.3d at 66 (citing M.G.L. ch. 140, § 131(a)).

 All three categories are issued by the relevant "licensing authority," which is defined as

"the chief of police or the board or officer having control of the police in a city or town, or

persons authorized by them."  <u>Id.</u> (citing M.G.L. ch. 140, § 121).  Licensing decisions are subject

to judicial review in the state district court having jurisdiction in the locality where the person

applied for the license.  M.G.L. ch. 140, § 131(f).  With respect to Class A and Class B licenses,

the licensing authority is required to conduct a "two-step inquiry" to determine the applicant's

eligibility.  <u>See</u> <u>Pineiro v. Gemme</u>, No. 10-40262-FDS, 2013 WL 1285475, *3 (D. Mass. Mar.

26, 2013) (citing <u>Ruggiero v. Police Com'r of Boston</u>, 18 Mass. App. Ct. 256, 259 (1984)).[6]

 First, the licensing authority looks at the applicant's personal suitability for gun

ownership.  <u>Id.</u>  If an applicant does not fall into any of the enumerated disqualifying categories,[7]

the licensing authority must determine whether the applicant "is a suitable person to be issued

such license."  M.G.L. ch. 140, § 131(d).  Second, the licensing authority considers whether the

applicant has a "proper purpose" for carrying a firearm.  <u>Ruggiero</u>, 18 Mass. App. Ct. at 259.

 The licensing authority must make a decision on the application within forty days from

the date of application.  <u>See</u> M.G.L. ch. 140, § 131(e).  Any applicant aggrieved by a denial of a

license may file a petition to obtain judicial review of the decision.  M.G.L. ch 140, § 131(f).

---

[6] There is no "suitable person" requirement for issuance of FID cards.  The licensing
authority "shall issue" an FID card unless the applicant falls within one of the statute's
enumerated categories of ineligible individuals.  M.G.L. ch. 140, § 129B(1).

[7] For example, minors and the mentally ill are categorically disqualified from gun
possession.  <u>See</u> M.G.L. ch. 140, § 131(d)(i)-(vii)).

—

IV.    MOTION FOR SUMMARY JUDGMENT

Ling asserts claims under Section 1983 against the Town and Pawlina for violating his

Second Amendment[8] right to keep and bear arms.  Defendants submit that they are entitled to

summary judgment on the Section 1983 claims because: 1) Ling has failed to identify a custom,

policy, or practice by which the Town deprived him of his constitutional rights; 2) Pawlina is

entitled to qualified immunity; and 3) there is no constitutional right to carry a concealed firearm

in public.  Def. Mem. at 13-18.[9]

A.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could

resolve the point in the favor of the non-moving party."  Sanchez v. Alvarado, 101 F.3d 223, 227

(1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential

to affect the outcome of the suit under the applicable law."  Id.  (quotations and citations

omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the

opposing party can avoid summary judgment only by providing properly supported evidence of

disputed material facts that would require trial.  See id. at 324.  "[T]he non-moving party 'may

---

[8] Ling bases his claims on both the Second and Fourteenth Amendments, see Docket No.
1, Ex. 2, ¶¶ 23, 27.   However, "it is the Second Amendment that provides the sole source of the
right to keep and bear arms; the Fourteenth Amendment merely incorporates that right against
the states."  Hightower v. City of Boston, 822 F. Supp. 2d 38, 56 (D. Mass. 2011), aff'd, 693
F.3d 61 (1st Cir. 2012) (citing McDonald v. City of Chicago, Ill., __ U.S. __, 130 S.Ct. 3020,
3050 (2010)).

[9] "Def. Mem. _" refers to Defendants' Memorandum of Law in Support of Their Motion
For Summary Judgment.  Docket No.  34.

not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

"[T]he material creating the factual dispute must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth.  Optimistic conjecture . . . or hopeful surmise will not suffice."  Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 338 (1st Cir. 1997).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate."  Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

B.    Analysis

Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights.  Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008).  Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983.  Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393-4 (1989).

"A claim under Section 1983 has two essential elements.  First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law."  Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997).  For purposes of the Defendants' motion, there is no dispute that the Defendants were acting under color of state law.  However, Defendants contend that Ling has failed to create a genuine issue of material fact that they deprived him of any constitutional rights.

    1.  Count I – The Town

Ling claims that the Town engages in a custom or practice that deprives individuals of their Second Amendment rights.  Docket No. 1, Ex. 2 ¶¶ 22-23.

Under Section 1983, it is well established that a municipality is not liable for the actions of its employees simply by virtue of the employment relationship.  Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 692 (1978).  Instead, under Monell and subsequent cases, a plaintiff seeking to prove municipal liability under Section 1983 must identify a municipal policy or custom that caused the plaintiff's injury.  Id. at 694; City of Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985); Young v. City of Providence, 404 F.3d 4, 25 (1st Cir. 2005).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  Board of the County of Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-04 (1997).  "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  Id. at 404.

A Section 1983 claim based on a theory of municipal policy is only viable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. "The governmental policy must be so tied to the challenged acts that it can be said to be the moving force of the constitutional violation." Bibbo v. Mulhern, 621 F. Supp. 1018, 1027 (D. Mass. 1985) (internal citations omitted).

Similarly, in order to establish a Section 1983 claim against a municipality based on a theory of municipal custom, a plaintiff must demonstrate a practice by local officials that is so "well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (citations omitted). In addition, the plaintiff must prove that the "custom must have been the cause of and the moving force behind the deprivation of constitutional rights." Id.

Here, Ling has not pointed to any evidence that would create a genuine issue of fact regarding municipal liability. Specifically, he has provided no evidence of a policy or custom that caused the alleged constitutional violations. Ling submits that the Defendants engaged in a policy or practice that provides for the arbitrary denial of LTC applications. Pl. Opp. at 11. Ling further claims that the "the Town has engaged in a custom or practice, at least as to Plaintiff, of allowing an officer to fill out and process LTC application's [sic] that ultimately could cause Application denial." Pl. Opp. at 3 (emphasis added).

Ling does not point to any evidence that would support a finding that this policy or custom, even if it existed, is well settled and/or widespread. Nothing in the record indicates that the allegedly unconstitutional municipal actions affected anyone other than Ling. Indeed, Ling

himself acknowledged that he did not know of anyone who had been denied a LTC, let alone any denial as a result of the allegedly unconstitutional actions.  DSMF, Ex. D at 7.

Nevertheless, Ling argues that Pawlina's actions with respect to Ling alone could expose the Town to Monell liability.  A single decision by a municipal policymaker constitutes official policy "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).  Here, however, Ling has not provided any evidence that Pawlina's denial constitutes the official policy of the Town.  See also Pineiro, 2013 WL 1285475, at * 11.

Accordingly, the Court grants summary judgment in favor of the Town.

2.      Count II – Pawlina

The complaint further alleges that Pawlina's denial violated Ling's Second Amendment right to keep and bear arms.  Docket No. 1, Exhibit 2, ¶¶ 26-27.  Defendants submit that Pawlina is entitled to qualified immunity because his actions were reasonable in light of the clearly established law at the time he denied Ling's application.  Def. Mem. at 13-15.  In the alternative, they contend that the Second Amendment does not encompass a right to carry a concealed, large capacity weapon in public.  Id. at 16.

The qualified immunity doctrine provides public officials an immunity from suit and not a mere defense to liability.  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  A court must perform a two-step analysis in determining qualified immunity.  Id. at 268-9.  A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendants' alleged violation.  Id.  A right is "clearly established" if at the time of the alleged violation, the contours of the right were "sufficiently clear that a reasonable official would

understand that what he is doing violates that right." <u>Id.</u> at 269 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).

The Second Amendment provides as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In <u>Heller</u>, the Supreme Court noted that the Second Amendment encompasses "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570, 635 (2008) (finding a D.C. ban on handgun possession in the home violates the Second Amendment). In <u>McDonald</u>, decided in 2010, the Supreme Court held that the "right to possess a handgun in the home for purposes of self-defense" applies equally to the states. <u>McDonald</u>, 130 S.Ct. at 3050. Neither <u>Heller</u> nor <u>McDonald</u> addressed the question of Second Amendment rights outside the home. In both cases, the Supreme Court explicitly avoided defining the contours of the right to bear arms. <u>See</u> <u>Heller</u>, 554 U.S. at 634; <u>see</u> <u>also</u> <u>McDonald</u>, 130 S.Ct. at 3049.

In the years since <u>Heller</u>, the First Circuit has discussed the scope of the Second Amendment on several occasions. <u>See</u> <u>Pineiro</u>, 2013 WL 1285475 at *7-8 (collecting cases). In one such instance, the First Circuit noted that Second Amendment rights are "not unlimited." <u>See</u> <u>United States v. Rene E.</u>, 583 F.3d 8, 12 (1st Cir. 2009) (finding federal statute prohibiting juvenile possession of handguns did not violate Second Amendment). Indeed, the <u>Rene E.</u> court cited <u>Heller</u>'s discussion on certain "presumptively lawful" restrictions on the Second Amendment including, among others, laws prohibiting the carrying of concealed weapons. <u>Id.</u>

In 2012, after Pawlina's decision, the First Circuit declined to reach the issue of the scope of the Second Amendment, but noted that other federal courts have taken up this issue with

varied conclusions.  See Hightower, 693 F.3d at 72 n. 8 (collecting cases). [10]  Given the

uncertainty in this area of the law, Pawlina was not unreasonable in believing that a denial of

Ling's LTC application was constitutional.  Accordingly, the Court finds that Pawlina is entitled

to qualified immunity.[11]

V.      MOTION FOR LEAVE TO AMEND THE PETITION AND COMPLAINT

        Ling seeks leave to amend his complaint to add allegations that Pawlina failed to deny

the LTC within the forty-day timeframe provided by Section 131.  See Docket No. 29, Ex. 1 at 6.

        As an initial matter, the precise nature of Ling's claim is not clear.  The Defendants read

the proposed amended complaint to assert a claim under Section 131 itself.  See Docket No. 31

at 2-3.  On its face, however, the proposed complaint asserts that the violation of Section 131, in

turn, constituted a deprivation of Ling's Second Amendment right to keep and bear arms that is

actionable under Section 1983.  See Docket No. 30 ¶¶ 33-35.  As explained by Ling during oral

argument, the claim asserts that Pawlina's failure to deny Ling's LTC application within forty

days was both arbitrary and capricious under Section 131 as well as a violation of Section 1983.

---

[10] To determine whether Pawlina violated a "clearly established" right, this Court focuses
on the relevant case law as it existed at the time he denied Ling's LTC application in 2011.  See
Sanchez v. Pereira-Castillo, 590 F.3d 31, 53 (1st Cir. 2009) ("the salient question is whether the
state of the law at the time of the alleged violation gave the defendant fair warning that his
particular conduct was unconstitutional.") (citation omitted).  The Court cites to Hightower, a
2012 case, only to illustrate the continued uncertainty in this area of the law.

[11] Because the Court finds that Pawlina is entitled to qualified immunity, it need not
discuss whether the Second Amendment encompasses a right to carry a concealed and/or large
capacity weapon in public.  See United States v. Garcia–Hernandez, 659 F.3d 108, 116 (1st Cir.
2011) (Ripple, J., concurring) ("It is now permissible for a court to determine that considerations
such as judicial economy and the danger of premature constitutional adjudication counsel against
resting its decision on constitutional grounds.  Instead, the court first may determine that, at the
time they acted, the defendants' actions did not violate settled constitutional principles.") (citing
Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

To the extent that Ling seeks to assert an additional Section 1983 claim, Ling's requested amendment is futile.[12]  Indeed, it is "well settled that the violation of state law does not rise to a violation of section 1983."  Yohe v. Marshall, CIV.A. 08-10922-MBB, 2010 WL 4027797, *3 (D. Mass. Oct. 14, 2010); see also Martinez v. Colon, 54 F.3d 980, 989 (1st Cir. 1995) ("It is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim.") Because the proposed claim does not assert a Section 1983 violation owing to anything other than the violation of Section 131's forty-day timeframe, it must fail.

Accordingly, the Court denies Ling's motion to amend the complaint to the extent it seeks to add allegations supportive of his Section 1983 claims.[13]  However, as discussed below, because this Court remands Ling's petition for review, the Court denies his motion without prejudice to the extent it seeks to add allegations to the petition.

## VI.   REMAND OF PETITION FOR REVIEW

Because this Court grants summary judgment for the Defendants on the Section 1983 claims, it declines to exercise supplemental jurisdiction over the remaining state law claims.  See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.") (citations omitted).  Where, as here, the federal claims are dismissed before trial, "the balance of competing factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims."  Id.  When asked at oral

---

[12] In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6).  Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

[13] Because the Court finds that the amendment would be futile, it does not address Defendants' argument that the proposed amendment is untimely.

argument about the possibility of remanding the petition for review, no party put forth a compelling reason why this Court should not follow the ordinary rule and decline to exercise jurisdiction over the state law claims.  In addition, the state law claims raise significant questions of state law that are best resolved in state court.  Accordingly, this Court dismisses the complaint and remands the petition for review to state court for further consideration.

VII.   ORDER

For the foregoing reasons, the Court orders as follows:

1)   Defendants' motion for summary judgment is GRANTED as to the Section 1983 claims and DENIED without prejudice as to the petition for review;

2)   Ling's motion for leave to amend the petition for review and complaint is DENIED to the extent it seeks to add allegations in support of the Section 1983 claims and DENIED without prejudice to the extent it seeks to add allegations to support the petition for review; and

3)   The petition for review is hereby remanded to state court.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE